RECEIPT NUMBER

200514400

**ORIGINAL**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

26
attach A-B

**DAVID J. BAZZETTA,**

**Plaintiff,**

-v-

**DAIMLERCHRYSLER CORP.,**
**a Delaware Corporation,**

**Defendant.**

```
JUDGE : Cohn, Avern
DECK  : S. Division Civil Deck
DATE  : 09/28/2004 @ 16:38:43
CASE NUMBER : 2:04CV73806
CMP BAZZETTA V. DAIMLERCHRYSLER
(DA)
```

Magistrate Judge

MAGISTRATE JUDGE DONALD A. SCHEER

================================================================

EISENBERG & BOGAS, P.C.
SUE ELLEN EISENBERG (P25530)
KATHLEEN L. BOGAS (P25164)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway
Suite 145
Bloomfield Hills, Michigan 48304
Tel: 248-258-6080
Fax: 248-258-9212

================================================================

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff David J. Bazzetta, by and through his attorneys, Eisenberg & Bogas, P.C., and states as follows:

### PARTIES AND JURISDICTION

1.      This Court has jurisdiction pursuant to 18 U.S.C. § 1514A (b) (1) (B) (Sarbanes-Oxley); 29 U.S.C. § 626(c) (Age Discrimination in Employment Act); 42 U.S.C. § 12117(a) (Americans with Disabilities Act); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343 (a) (4) (jurisdiction over civil rights claims). This

Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims of retaliation in violation of the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. and the Michigan Handicappers' Civil Rights Act, MCLA 37.1101 and retaliatory discharge in violation of public policy.

2.     Plaintiff is a citizen of the Unites States and resides in Macomb County, Michigan.

3.     Defendant DaimlerChrysler Corp. is a Delaware corporation with its principal place of business in Auburn Hills, Oakland County, Michigan.

4.     DaimlerChrysler Corp. is a wholly-owned subsidiary and business unit of DaimlerChrysler AG, a German corporation.

5.     DaimlerChrysler AG, as an international company that is listed on the New York Stock Exchange ("NYSE") and on other stock exchanges throughout the world, DaimlerChrysler AG and DaimlerChrysler Corp. are subject to the provisions of the Sarbanes-Oxley Act enacted in the U.S. in July 2002.

6.     DaimlerChrysler Corp. is an agent of DaimlerChrysler AG within the meaning of the Sarbanes-Oxley Act.

7.     DaimlerChrysler Corp. also is a contractor of DaimlerChrysler AG within the meaning of the Sarbanes-Oxley Act.

8.     The discriminatory employment practices alleged in this Complaint occurred within the State of Michigan.

9.     This is an action for retaliation in violation of the Sarbanes-Oxley Act of 2002, retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation in violation of the Americans with Disabilities Act ("ADA"), retaliation in

violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), and the Michigan Handicappers' Civil Rights Act ("HCLA").

10.     Defendant is an employer and Plaintiff was its employee within the meaning of the Sarbanes-Oxley Act, ADEA, ADA, the ELCRA and the HCLA.

11.     On or about January 14, 2004, Plaintiff was terminated from his position with Defendant.

12.     On March 22, 2004, Plaintiff filed a timely complaint under Sarbanes-Oxley with the Occupational Safety and Health Administration ("OSHA") of the Department of Labor.

13.     In accordance with 18 U.S.C. § 1514A(b)(1)(B), the 180 day period in which OSHA was to issue a final decision elapsed on September 18, 2004.  OSHA has not issued a final decision and Plaintiff has the right to proceed in the appropriate district court of the United States.

14.     On March 29, 2004, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of retaliation in violation of the ADEA and ADA, which was within 300 days of the commission of the unlawful employment practices alleged in this claim.

15.     Plaintiff received his notice of right to sue on June 30, 2004, and he has filed this complaint within 90 days of receiving his notice of rights.  Exhibit A.

16.     Defendant has waived in writing any requirement that Plaintiff exhaust Defendant's internal employee dispute resolution procedure or arbitrate his claims. Exhibit B.

17.     The amount in controversy exceeds $75,000, exclusive of interests and

costs.

## STATEMENT OF FACTS

18.     Plaintiff was hired by Defendant's predecessor, Chrysler Corp., in May 1983. Plaintiff was hired as a financial analyst.

19.     At all times relevant hereto, Plaintiff performed his job diligently.

20.     On or about January 14, 2004, Plaintiff was terminated from his position as Director of Corporate and Product Investment Analysis in the Product Development Finance Group at DaimlerChrysler Corporation ("DCC").

21.     From March 2001 to March 2002, Plaintiff held the position of Director of Manufacturing, Procurement & Supply and Research & Development Audit, in the Corporate Audit Department. Plaintiff was placed in this position by Mr. James Donlon then-Senior Vice President and Controller at DCC.  Mr. Donlon instructed Plaintiff to "shake things up in the Audit Department" because Mr. Donlon as Controller, was deeply concerned the Corporate Audit had become complacent about its mission and responsibilities and was inappropriately "cozy" with the departments that it was auditing.

22.     In the first meeting with Mr. Chuck Struve the VP of Corporate Audit, Plaintiff was told by Mr. Struve that he was not the first choice of available candidates to join the Audit group.

23.     In July 2001, during a Corporate Audit Executive Committee meeting in Stuttgart, Germany, Plaintiff learned that business units within DaimlerChrysler AG continued to maintain secret bank accounts to bribe foreign government officials even though the company knew and acknowledged that the practice was illegal under United States securities laws.

- 4 -

24.    During the discussion, Hubertus Buderath, Vice President of Corporate Audit (Stuttgart) for DaimlerChrysler AG made a presentation.  Mr. Buderath reported that he had just returned from a trip to South America where he had met with the CEO of the Mercedes Benz Business Unit.  Mr. Buderath further explained that a common practice of Daimler Benz prior to the acquisition of the Chrysler Corporation was the use of secret bank accounts to bribe government officials (i.e., a certain amount was withheld/deducted from the gross proceeds from the sale of each Mercedes vehicle at the Business Unit and deposited in a local bank account).

25.    More specifically, Mr. Buderath stated that: (1) he had briefed the then-Chairman of DCAG, Jurgen Schrempp (to whom Mr. Buderath directly reported) as to the fact that forty (40) accounts of this nature still existed; and (2) Dr. Manfred Gentz, the CFO of DCAG, was aware of this practice and that the dollars represented by these accounts were "buried" deep in DCAG's balance sheet.

26.    Mr. Buderath further stated that the company planned to wind-down this practice (acknowledging that it violated SEC regulations) with the caveats that the remaining forty accounts continued to exist world-wide and that these accounts would be difficult to eliminate because the chief executives of the Business Units not only favored this practice but believed it a necessary cost of doing business.

27.    On the day of the meeting, Plaintiff protested the company's continuing use of the illegal secret bank accounts to the American Vice President in charge of Corporate Audit, Charles Struve, who also was Plaintiff's immediate supervisor at the time.

28.    Instead of expressing concern about this illegal practice, Mr. Struve

- 5 -

expressed dismay at Plaintiff raising the issue.   Mr. Struve instructed Plaintiff to "forget what was said." Mr. Struve further insisted that "issues that arise in Corporate Audit must remain in Corporate Audit."

29.   Mr. Struve made clear that he would undertake no action to investigate or recommend that the practice immediately cease, which Plaintiff believed Mr. Struve was obliged to do in his capacity as the head of Corporate Audit.

30.   As a result of Mr. Struve's response, Plaintiff believed hat he had to take the issue to a person higher in the company's organization.

31.   Upon Plaintiff's return from Stuttgart, Plaintiff sought out Mr. Donlon to report the company's continuing violations of securities law.

32.   Plaintiff believed that Mr. Donlon, as a senior corporate officer, was the appropriate individual to investigate and address the issues of secret bank accounts and bribery of foreign governmental officials and would pass the information onto his boss (Dr. Manfred Gentz, Chief Financial Officer of DaimlerChrysler AG and member of the Board of Management of DaimlerChrysler AG), who had ultimate responsibility for financial oversight and compliance.

33.   Plaintiff protested the company's illegal conduct to Mr. Donlon.

34.   Plaintiff also protested Mr. Struve's failure to appropriately respond to Plaintiff's complaint, Mr. Struve's dismissive attitude toward Plaintiff's complaint, and Mr. Struve's thinly-veiled threat that Plaintiff should not take his complaint to anyone outside Corporate Audit.

35.   During Plaintiff's time in the Corporate Audit Department, March 2001 to March 2002, Plaintiff was involved in a number of audits that uncovered questionable

business practices.   The results of an audit can affect Defendant's reports to shareholders and the Securities and Exchange Commission.

36.   In a number of instances, including the Precious Metals Audit, the 5% Cost Reduction Audit and the CN Process Audit, Mr. Struve forbade the publication of these audits entirely or until they were dramatically changed.

37.   Mr. Struve's position as the head of DaimlerChrysler's Corporate Audit Department required him to sign and approve every audit.   Accordingly, if he did not approve an audit, then the audit would not be released.

38.   Plaintiff reasonably believed that that Mr. Struve's decisions to withhold certain audits were improper.   Plaintiff also reasonably believed that the audits would negatively affect Daimler Chrysler's financial reports, and public statements made regarding the Company's  Financial Turnaround Plan (2001-2003)

39.   Plaintiff repeatedly objected directly to Mr. Struve about the withheld audits.

40.   Plaintiff also advised Mr. Donlon about the suppressed audits.

41.   Plaintiff provided copies of buried audits to Mr. Donlon.

42.   Mr. Donlon was not a member of the Corporate Audit Department.  The Corporate Audit Department, however, had a functional reporting relationship to Mr. Donlon in that the audits were prepared for and transmitted to Mr. Donlon.

43.   In October 2001, at a dinner meeting, Hubertus Buderath, Mr. Struve's German counterpart, told Plaintiff that Mr. Struve was retiring and that Plaintiff was Mr. Buderath's choice to head up the Auburn Hills Audit group.

44.   Mr. Buderath told Plaintiff that Mr. Struve blamed Plaintiff for pushing

Mr. Donlon to force Mr. Struve to retire and that Mr. Struve did not want to retire.

45.     At the annual Audit Department meeting in Lamerbuckel, Germany in December 2001, Mr. Struve along with Mr. Buderath told Plaintiff that Mr. Struve would be retiring and that Plaintiff would not be placed into Mr. Struve's position.    Previously, in October 2001, Mr. Buderath told Plaintiff that Plaintiff would receive Mr. Struve's job.

46.     When Plaintiff questioned Mr. Buderath about the decision to pass over Plaintiff for Mr. Struve's job, Mr. Buderath replied that he had received new information from Mr. Struve that had changed his mind about Plaintiff.

47.     When Plaintiff inquired further, Mr. Buderath declined to provide details. Mr. Struve and Mr. Buderath stated that Plaintiff "did not fit the audit mold," which is a statement that Mr. Struve had repeatedly made to Plaintiff during Plaintiff's time in Corporate Audit.

48.     Plaintiff immediately reported the foregoing to Mr. Donlon.

49.     In January 2002, Mr. Donlon asked Plaintiff to prepare a handwritten note concerning the various matters in Corporate Audit as to which Plaintiff had complained and the retaliation to which Plaintiff had been subjected as a result of Plaintiff's complaints to senior management inside and outside Corporate Audit.

50.     At that time, Plaintiff also complained to David Slates, Vice President of Manufacturing Finance, who reported to Mr. Donlon and had the responsibility of managing the headcount for Mr. Donlon's entire finance area.

51.     In February 2002, Plaintiff received the worst performance evaluation in his career.  The written evaluation had been prepared by Mr. Struve prior to his January 2002 retirement and was delivered to Plaintiff by Mr. Buderath. At no time during the

year did Mr. Struve counsel or provide any constructive feedback to Plaintiff that would have indicated that a significant performance issue existed that could effect his annual evaluation and therefore performance-related compensation (bonus, stock options and merit raise)

52.    The 2001 performance evaluation given in February 2002 was retaliatory.

53.    Mr. Struve blamed Plaintiff for his early retirement because he believed that Plaintiff had been reporting Audit Department improprieties to Mr. Donlon.

54.    Mr. Struve also retaliated against Plaintiff for repeatedly protesting improper practices in the audit department, including its sanctioning the secret bank accounts used for bribing foreign government officials and the suppression of various audits.

55.    Plaintiff believed that Mr. Buderath was threatened by Plaintiff's connection to Mr. Donlon, who was higher than Mr. Buderath in the organizational structure, given Mr. Buderath's belief that Mr. Donlon had forced Mr. Struve to retire as a result of Plaintiff's complaints about auditing and financial improprieties.

56.    At the time that Mr. Buderath delivered the evaluation, he said, "your friend Mr. Donlon better save you this time."

57.    This declaration was a threat, which Plaintiff reported to Mr. Donlon.

58.    As a result of the foregoing, Mr. Donlon arranged for Plaintiff's return transfer to the Finance Department.

59.    Mr. Donlon's intervention prolonged Plaintiff's tenure until January 14, 2004, when Plaintiff was terminated by Defendant.

60.    Plaintiff was terminated two (2) calendar weeks after Mr. Donlon's

December 31, 2003 retirement from Defendant.

61.     In an attempt to counter the serious concerns raised by Plaintiff, Defendant claimed that Plaintiff was responsible for a questionable accounting entry. The investigation carried out by the Business Practices Office (which reports to Mr. Buderath) made no effort to discover the accounting entry was a documented instruction from Mr. Donlon to Plaintiff's immediate supervisor Mr. Ed Labatch, then-Vice President of Product Development Finance.

62.     On or about December 17, 2003, Plaintiff was instructed by Noel Baril (Human Resources Representative) and Mr. Labatch (Plaintiff's then-supervisor) that Plaintiff had to demote his subordinate Mr. Wayne Worley.

63.     Mr. Baril and Mr. Labatch told Plaintiff that the reason for the demotion was that that Mr. Worley was "old" and "sick."

64.     Mr. Worley was at the time approximately 53 years old and had a history of serious health-related issues.

65.     Plaintiff vigorously protested to both Mr. Baril and Mr. Labatch that their decision was illegal inasmuch as Mr. Worley reported to Plaintiff and Plaintiff personally knew that Mr. Worley had no performance deficiencies, much less any deficiency sufficient to justify a demotion.

66.     After much discussion, Plaintiff was permitted to offer to Mr. Worley only an "opportunity" to transfer to a plant supervisor position in Toledo as an alternative to demotion.

67.     That offer, however, was a sham because Plaintiff knew in advance that Mr. Worley would not accept a position in Toledo.

68.     As a result of the demands of both Mr. Baril and Mr. Labatch, Plaintiff was forced to demote Mr. Worley on December 17, 2003.

## COUNT I

## RETALIATION IN VIOLATION OF THE SARBANES-OXLEY ACT OF 2002

69.     Plaintiff incorporates by reference paragraphs 1 through 68 as if fully set forth at length herein.

70.     Defendant violated the Sarbanes-Oxley Act when it discriminated against Plaintiff by terminating him because he had reported a violation or suspected violation of law, including but not limited to the Foreign Corrupt Practices Act of 1977, as amended.

71.     As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice; and will continue to suffer these damages in the future.  Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADEA

72.     Plaintiff incorporates by reference paragraphs 1 through 71 as if fully set forth at length herein.

73.     Less than one month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of his age.

74.     Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his age.

75.     Defendant discharged Plaintiff.

76.     Plaintiff's complaint of age discrimination was a motivating factor in Defendant's decision to discharge Plaintiff.

77.     Defendant's retaliatory conduct was willful.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT III

### RETALIATION IN VIOLATION OF THE ADA

78.    Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth at length herein.

79.    Less than one month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of a perceived disability.

80.    Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his record of a physical or mental impairment that substantially limits one or more major life activities and/or because he was regarded as having such an impairment.

81.    Defendant discharged Plaintiff.

82.    Plaintiff's complaint of disability discrimination was a motivating factor in Defendant's decision to discharge Plaintiff.

83.    Defendant's retaliatory conduct was committed with malice or with reckless indifference to Plaintiff's protected rights.

84.    As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice.    Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment

- 13 -

against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT IV

## RETALIATION IN VIOLATION OF ELCRA

85.     Plaintiff incorporates by reference paragraphs 1 through 84 as if fully set forth at length herein.

86.     Less than a month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of his age.

87.     Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his age.

88.     Defendant discharged Plaintiff.

89.     Plaintiff's complaint of age discrimination was a significant factor in Defendant's decision to discharge Plaintiff.

90.     As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice.    Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff

would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT V

## RETALIATION IN VIOLATION OF THE MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT ("HCRA")

91.     Plaintiff incorporates by reference paragraphs 1 through 90 as if fully set forth at length herein

92.     Less than a month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of a perceived handicap.

93.     Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his record of a physical or mental impairment that substantially limits one or more major life activities and/or because he was regarded as having such an impairment..

94.     Defendant discharged Plaintiff.

95.     Plaintiff's complaint of handicap discrimination was a significant factor in Defendant's decision to discharge Plaintiff.

96.     As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice.   Additionally, Plaintiff has incurred attorney fees and costs.

- 15 -

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT VI

### RETALIATORY DISCHARGE AGAINST PUBLIC POLICY

97.     Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth at length herein.

96.     Defendant through its agents, servants, or employees, violated public policy enshrined in the Sarbanes-Oxley Act of 2002 and/or federal securities laws, regulations and/or rules.

97.     Plaintiff refused to violate these policies and reported the actions of certain agents, servants, and/or employees of Defendant to Defendant's upper management levels.

98.     Defendant discharged Plaintiff in whole or in part for refusing or failing to violate the federal public policy enshrined in the Sarbanes-Oxley Act of 2002 and/or federal securities laws, and for reporting the actions of the agents, servants, and/or employees of Defendant to Defendant's upper management levels.

99.     As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life,

including the opportunity to pursue the gainful occupation of choice.   Additionally, Plaintiff has incurred attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

EISENBERG & BOGAS, P.C.

By: _____
Sue Ellen Eisenberg (P25530)
Kathleen L. Bogas (P25164)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway
Suite 145
Bloomfield Hills, MI 48304
Phone: 248-258-6080

Date: September 28, 2004

- 17 -



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Detroit District Office

477 Michigan Avenue, Room 865
Detroit, MI 48226-9704
(313) 226-4600
TTY (313) 226-7599
FAX (313) 226-2778

June 30, 2004

David Bazzetta
48757 Elmhurst
Macomb, MI 48044

RE:   Bazzetta vs. Daimler Chrysler
       Charge No: 230-A4-01387

Dear Mr. Bazzetta:

This letter is sent to provide you with an overview of the information and evidence compiled during the investigation of the above-referenced charge of discrimination. Based upon the information listed below, the EEOC has determined that the processing of this matter will be discontinued. This decision was made due to the fact that the information obtained during the investigation does not support a conclusion that the statute(s) complained of has/have been violated.

On March 25, 2004, you filed a charge of discrimination

The investigation of your charge has revealed the following:

1. The investigation failed to produce evidence to show that retaliation was the factor of your discharge. In addition, you never complained internally or opposed discrimination. Moreover, you only stated that it was not right to terminate an employee who was old and sick. Furthermore, a lot of your allegations are non-jurisdictional.

2.

3: Due to the evidence provided in this case it is unlikely that further investigation into this matter would result in a cause finding. Therefore, it appears that there is a legitimate nondiscriminatory reason for your alleged allegations.

Based on this evidence, the EEOC is unable to conclude that retaliation, was a factor in the Respondent's decision regarding you. When the evidence fails to meet a "more likely than not" standard, the EEOC has no choice but to dismiss the charge. Further, this dismissal does not state that the Respondent was in compliance with the statutes.

It should be noted that the Dismissal and Notice of Rights which you receive relating to your charge will allow you to proceed with your allegations in federal court, if you so desire. **UPON RECEIPT OF THE DISMISSAL AND NOTICE OF RIGHTS IT IS IMPERATIVE THAT YOU FILE SUIT IN THE UNITED STATES DISTRICT COURT WITHIN NINETY (90) DAYS OF RECEIPT, FAILURE TO DO SO WILL RESULT IN YOUR LOSS OF RIGHT TO PROCEED IN COURT.** An information sheet outlining your rights and filing procedures will accompany the Dismissal and Notice of Rights. Further, the EEOC will provide you, upon request, with a list of attorneys who practice in the field of employment discrimination. Please note that the EEOC does not recommend the attorneys nor make any representation regarding their abilities.

Sincerely,

Mark Ellison
Federal Investigator





# CLARK HILL
### PLC
A T T O R N E Y S   A T   L A W

500 Woodward Avenue
Suite 3500
Detroit, Michigan 48226-3435
Tel. (313) 965-8300 ∎ Fax (313) 965-8252
www.clarkhill.com

William G. Asimakis, Jr.
(313) 965-8880
wasimakis@clarkhill.com

August 26, 2004

**VIA FACSIMILE**
Ms. Sue Ellen Eisenberg
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite #145
Bloomfield Hills, Michigan 48304

Re:     David Bazzetta

Dear Ms. Eisenberg:

DaimlerChrysler Corporation's Employee Dispute Resolution Process (EDRP) was designed to provide a fair, timely, and impartial method to resolve employment disputes. Important to the EDRP is the concept that if the dispute is not resolved through the first several steps, then the dispute is submitted to binding arbitration for final resolution. Arbitration under the EDRP affords both parties the opportunity to discover facts supporting their respective positions, as well as the opportunity to present their respective cases to an impartial, experienced arbitrator. Arbitration under the EDRP also offers a quick and cost-effective method of resolving disputes, unlike the courts.

In your letter of June 28, 2004, you raised several objections to the EDRP on behalf of Mr. Bazzetta and made clear that you did not believe that the EDRP was enforceable. (Notably, DaimlerChrysler does not agree that the EDRP is unenforceable.) But, despite your client's apparent objection to the EDRP, he has proceeded with the EDRP, including submitting Part A "Dispute Notice," and Part C "Employee Appeal For Corporate Review." In you letter of July 30, 2004, you requested that we "dispense with the Corporate Review stage of the EDRP . . . and agree to proceed to arbitration." You also write in that July 30, 2004 letter, however, that you "continue to preserve all of our objections to the company's EDRP procedure as outlined in our letter of June 28, 2004." It is apparent to us that you want to proceed with arbitration under the EDRP, but reserve your ability to object to the enforceability of an unfavorable ruling. Such a stance ignores and undermines the central purpose of the EDRP to provide a fair, timely, and impartial method to resolve employment disputes.

To sum up, in light of your objections, DaimlerChrysler is unwilling to proceed further with the EDRP (specifically including arbitration) and will not issue a response under Part D. Nevertheless, we continue to believe that there are benefits to both parties in bringing this matter

3326558v1
16750/097415

Detroit, Michigan ∎ Birmingham, Michigan ∎ Lansing, Michigan

CLARK HILL PLC

Ms. Sue Ellen Eisenberg
August 26, 2004
Page 2

to a final resolution  through binding arbitration.  Please contact me if you wish to discuss terms of an agreement to arbitrate.

Very truly yours,

CLARK HILL PLC

William G. Asimakis, Jr.

WGA/bb

3326558v1
16750/097415

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

           Plaintiff,

                                Case No.   O4-73806 -

-v-                            Judge
                                Magistrate Judge   AVERN COHN

DAIMLERCHRYSLER CORP.,
a Delaware Corporation,           MAGISTRATE JUDGE DONALD A. SCHEER

           Defendant.

====================================================

EISENBERG & BOGAS, P.C.
SUE ELLEN EISENBERG (P25530)
KATHLEEN L. BOGAS (P25164)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway
Suite 145
Bloomfield Hills, Michigan  48304
Tel: 248-258-6080
Fax: 248-258-9212

====================================================

**JURY DEMAND**

    Plaintiff David J. Bazzetta, by and through his attorneys, hereby demands a jury

trial on all issues so triable.

                                   **EISENBERG & BOGAS, P.C.**

                           By:     _____
                                   Sue Ellen Eisenberg (P25530)
                                   Kathleen L. Bogas (P25164)
                                   Attorneys for Plaintiff
                                   33 Bloomfield Hills Parkway
                                   Suite 145
                                   Bloomfield Hills, MI  48304
Date:  September 28, 2004                   Phone: 248-258-6080

- 18 -

**ORIGINAL**

JS 44 11/99        **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: Oakland

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**04-73806**

## I. (a) PLAINTIFFS

David J. Bazzetta

**DEFENDANTS**

DaimlerChrysler Corporation

**04-73806**

(b) County of Residence of First Listed   Macomb

26099

County of Residence of First Listed   Oakland

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) Attorney's (Firm Name, Address, and Telephone Number)

Sue Ellen Eisenberg (P25530) Kathleen L. Bogas (P25164)
Eisenberg & Bogas, P.C., Suite 145, 33 Bloomfield Hills
Parkway, Bloomfield Hills, MI 48304 (248) 258-5080

Attorneys (If Known)

MAGISTRATE JUDGE DONALD A. SCHEER

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item 111)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21: 881 | 28 USC 157 | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of | ☐ 320 Assault Libel | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| Overpayment and | And Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced & |
| Enforcement of Judgment | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 151 Medicare Act | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Com mod ities/ |
| Student Loans | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| (Excl. Veterans) | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 H1A (1395ff) | 12 LISC 3410 |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | Product Liability | Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | Injury | | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 790 Other Labor | or Defendant) | Determination Under |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Litigation | ☐ 871 IRS-Third Party | Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multi district Litigation

☐ 7 Appeal to District Judge from Magistrate

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Discrimination/Retaliation in violation of the Sarbanes-Oxley Act of 2002, ADEA; ADAct; Elliott-Larsen Civils Rights Act; Michigan Handicappers Civil Rights Act; and retaliatory discharge in violation of Public Policy

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE   N/A

DOCKET NUMBER   N/A

DATE   09/28/04

SIGNATURE OF ATTORNEY OF RECORD

## PURSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously dismissed?    ☐ Yes  ⊠ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2.  Other than stated above, are there any pending or previously
    discontinued or dismissed companion cases in this or any other
    court, including state court? (Companion cases are matters in which
    it appears substantially similar evidence will be offered or the same
    or related parties are present and the cases arise out of the same
    transaction or occurrence.)    ☐ Yes  ⊠ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

   Notes : _____