UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

    Plaintiff,

-v-

Case No. 04-73806
Judge: Avern Cohn

DAIMLERCHRYSLER CORP.,
a Delaware Corporation,

    Defendant.

| EISENBERG & BOGAS, P.C. | CLARK HILL PLC |
|---|---|
| SUE ELLEN EISENBERG (P25530) | JOHN E. BERG (P40428) |
| KATHLEEN L. BOGAS (P25164) | Attorneys for Defendant |
| Attorneys for Plaintiff | 500 Woodward Avenue |
| 33 Bloomfield Hills Parkway | Suite 3500 |
| Suite 145 | Detroit, MI 48226 |
| Bloomfield Hills, Michigan 48304 | Tel: 313-965-8300 |
| Tel: 248-258-6080 | |
| Fax: 248-258-9212 | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff David J. Bazzetta, by and through his attorneys, Eisenberg & Bogas, P.C., and states as follows:

### PARTIES AND JURISDICTION

1.    This Court has jurisdiction pursuant to 18 U.S.C. § 1514A (b) (1) (B) (Sarbanes-Oxley); 29 U.S.C. § 626(c) (Age Discrimination in Employment Act); 42 U.S.C. § 12117(a) (Americans with Disabilities Act); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343 (a) (4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims of retaliation in violation of the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. and the Michigan Handicappers'

Civil Rights Act, MCLA 37.1101 and retaliatory discharge in violation of public policy.

2. Plaintiff is a citizen of the Unites States and resides in Macomb County, Michigan.

3. Defendant DaimlerChrysler Corp. is a Delaware corporation with its principal place of business in Auburn Hills, Oakland County, Michigan.

4. DaimlerChrysler Corp. is a wholly-owned subsidiary of DaimlerChrysler AG, a German corporation.

5. DaimlerChrysler AG, as an international company that is listed on the New York Stock Exchange ("NYSE") and on other stock exchanges throughout the world, DaimlerChrysler AG and DaimlerChrysler Corp. are subject to the provisions of the Sarbanes-Oxley Act enacted in the U.S. in July 2002.

6. DaimlerChrysler Corp. is an agent of DaimlerChrysler AG within the meaning of the Sarbanes-Oxley Act.

7. DaimlerChrysler Corp. also is a contractor of DaimlerChrysler AG within the meaning of the Sarbanes-Oxley Act.

8. The discriminatory employment practices alleged in this Complaint occurred within the State of Michigan.

9. This is an action for retaliation in violation of the Sarbanes-Oxley Act of 2002, retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation in violation of the Americans with Disabilities Act ("ADA"), retaliation in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), and the Michigan Handicappers' Civil Rights Act ("HCLA").

10. Defendant is an employer and Plaintiff was its employee within the meaning of

the Sarbanes-Oxley Act, ADEA, ADA, the ELCRA and the HCLA.

11. On January 15, 2004, Plaintiff was terminated from his position with Defendant.

12. On March 22, 2004, Plaintiff filed a timely complaint under Sarbanes-Oxley with the Occupational Safety and Health Administration ("OSHA") of the Department of Labor.

13. In accordance with 18 U.S.C. § 1514A(b)(1)(B), the 180 day period in which OSHA was to issue a final decision elapsed on September 18, 2004. OSHA has not issued a final decision and Plaintiff has the right to proceed in the appropriate district court of the United States.

14. Plaintiff filed a fifteen day Notice of Intent to File a Complaint in Federal Court pursuant to C.F.R. §1980.114 on November 4, 2004 and the fifteen days elapsed on November 20, 2004.

15. On March 29, 2004, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of retaliation in violation of the ADEA and ADA, which was within 300 days of the commission of the unlawful employment practices alleged in this claim.

16. Plaintiff received his notice of right to sue on June 30, 2004, and he has filed this complaint within 90 days of receiving his notice of rights.

17. Defendant has waived in writing any requirement that Plaintiff exhaust Defendant's internal employee dispute resolution procedure or arbitrate his claims.

18. The amount in controversy exceeds $75,000, exclusive of interests and costs.

## STATEMENT OF FACTS

19. Plaintiff was hired by Defendant's predecessor, Chrysler Corp., in May 1983. Plaintiff was hired as a financial analyst.

20. At all times relevant hereto, Plaintiff performed his job diligently.

21. On January 15, 2004, Plaintiff was terminated from his position as Director of Corporate and Product Investment Analysis in the Product Development Finance Group at DaimlerChrysler Corporation ("DCC").

22. From March 2001 to March 2002, Plaintiff held the position of Director of Manufacturing, Procurement & Supply and Research & Development Audit, in the Corporate Audit Department.

23. In July 2001, during a Corporate Audit Executive Committee meeting in Stuttgart, Germany, Plaintiff learned that business units within DaimlerChrysler AG continued to maintain secret bank accounts to bribe foreign government officials even though the company knew and acknowledged that the practice was illegal under United States securities laws.

24. During the discussion, Hubertus Buderath, Vice President of Corporate Audit (Stuttgart) for DaimlerChrysler AG made a presentation. Mr. Buderath reported that he had just returned from a trip to South America where he had met with the CEO of the Mercedes Benz Business Unit. Mr. Buderath further explained that a common practice of Daimler Benz prior to the acquisition of the Chrysler Corporation was the use of secret bank accounts to bribe government officials (i.e., a certain amount was withheld/deducted from the gross proceeds from the sale of each Mercedes vehicle at the Business Unit and deposited in a local bank account).

25. More specifically, Mr. Buderath stated that: (1) he had briefed the then-Chairman of DCAG, Jurgen Schrempp (to whom Mr. Buderath directly reported) as to the fact that forty (40) accounts of this nature still existed; and (2) Dr. Manfred Gentz, the CFO of DCAG, was aware of this practice and that the dollars represented by these accounts were "buried" deep in DCAG's balance sheet.

26. Mr. Budcrath further stated that the company planned to wind-down this practice (acknowledging that it violated SEC regulations) with the caveats that the remaining forty accounts continued to exist world-wide and that these accounts would be difficult to eliminate because the chief executives of the Business Units not only favored this practice but believed it a necessary cost of doing business.

27. On the day of the meeting, Plaintiff protested the company's continuing use of the illegal secret bank accounts to the American Vice President in charge of Corporate Audit, Charles Struve, who also was Plaintiff's immediate supervisor at the time.

28. Instead of expressing concern about this illegal practice, Mr. Struve expressed dismay at Plaintiff raising the issue. Mr. Struve instructed Plaintiff to "forget what was said." Mr. Struve further insisted that "issues that arise in Corporate Audit must remain in Corporate Audit."

29. Mr. Struve made clear that he would undertake no action to investigate or recommend that the practice immediately cease, which Plaintiff believed Mr. Struve was obliged to do in his capacity as the head of Corporate Audit.

30. As a result of Mr. Struve's response, Plaintiff believed hat he had to take the issue to a person higher in the company's organization.

31. Upon Plaintiff's return from Stuttgart, Plaintiff sought out James D. Donlon, then-Senior Vice-President and Controller, to report the company's continuing violations of securities law.

32. Plaintiff believed that Mr. Donlon, as a senior corporate officer, was the appropriate individual to investigate and address the issues of secret bank accounts and bribery of foreign governmental officials and would pass the information onto his boss (Dr. Manfred

Gentz, CFO), who had ultimate responsibility for financial oversight and compliance.

33. Plaintiff protested the company's illegal conduct to Mr. Donlon.

34. Plaintiff also protested Mr. Struve's failure to appropriately respond to Plaintiff's complaint, Mr. Struve's dismissive attitude toward Plaintiff's complaint, and Mr. Struve's thinly-veiled threat that Plaintiff should not take his complaint to anyone outside Corporate Audit.

35. During Plaintiff's time in the Corporate Audit Department, March 2001 to March 2002, Plaintiff was involved in a number of audits that uncovered questionable business practices. The results of an audit can affect Defendant's reports to shareholders and the Securities and Exchange Commission.

36. In a number of instances, including the Precious Metals Audit, the 5% Cost Reduction Audit and the CN Process Audit, Mr. Struve forbade the publication of these audits entirely or until they were dramatically changed.

37. Mr. Struve's position as the head of DaimlerChrysler's Corporate Audit Department required him to sign and approve every audit. Accordingly, if he did not approve an audit, then the audit would not be released.

38. Plaintiff reasonably believed that that Mr. Struve's decisions to withhold certain audits were improper. Plaintiff also reasonably believed that the audits would affect Daimler Chrysler's financial reports.

39. Plaintiff repeatedly objected directly to Mr. Struve about the withheld audits.

40. Plaintiff also advised Mr. Donlon about the suppressed audits.

41. Plaintiff provided copies of buried audits to Mr. Donlon.

42. Mr. Donlon was not a member of the Corporate Audit Department. The Corporate Audit Department, however, had a functional reporting relationship to Mr. Donlon in

that the audits were prepared for and transmitted to Mr. Donlon.

43. In October 2001, Hubertus Buderath, Mr. Struve's German counterpart, told Plaintiff that Mr. Struve was retiring.

44. Mr. Buderath told Plaintiff that Mr. Struve blamed Plaintiff for pushing Mr. Donlon to force Mr. Struve to retire and that Mr. Struve did not want to retire.

45. At the annual Audit Department meeting in Lamerbuckel, Germany in December 2001, Mr. Struve and Mr. Buderath told Plaintiff that Mr. Struve would be retiring and that Plaintiff would not be placed into Mr. Struve's position. Previously, in October 2001, Mr. Buderath told Plaintiff that Plaintiff would receive Mr. Struve's job.

46. When Plaintiff questioned Mr. Buderath about the decision to pass over Plaintiff for Mr. Struve's job, Mr. Buderath replied that he had received new information that had changed his mind about Plaintiff.

47. When Plaintiff inquired further, Mr. Buderath declined to provide details. Mr. Struve and Mr. Buderath stated that Plaintiff "did not fit the audit mold," which is a statement that Mr. Struve had repeatedly made to Plaintiff during Plaintiff's time in Corporate Audit.

48. Plaintiff immediately reported the foregoing to Mr. Donlon.

49. In January 2002, Mr. Donlon asked Plaintiff to prepare a handwritten note concerning the various matters in Corporate Audit as to which Plaintiff had complained and the retaliation to which Plaintiff had been subjected as a result of Plaintiff's complaints to senior management inside and outside Corporate Audit.

50. At that time, Plaintiff also complained to David Slates, Vice President of Manufacturing Finance, who reported to Mr. Donlon.

51. In February 2002, Plaintiff received the worst performance evaluation in his

- 7 -

career. The written evaluation had been prepared by Mr. Struve prior to his January 2002 retirement and was delivered to Plaintiff by Mr. Buderath.

52. The February 2002 performance evaluation was retaliatory.

53. Mr. Struve blamed Plaintiff for his early retirement because he believed that Plaintiff had been reporting Audit Department improprieties to Mr. Donlon.

54. Mr. Struve also retaliated against Plaintiff for repeatedly protesting improper practices in the audit department, including its sanctioning the secret bank accounts used for bribing foreign government officials and the suppression of various audits.

55. Plaintiff believed that Mr. Buderath was threatened by Plaintiff's connection to Mr. Donlon, who was higher than Mr. Buderath in the organizational structure, given Mr. Buderath's belief that Mr. Donlon had forced Mr. Struve to retire as a result of Plaintiff's complaints about auditing and financial improprieties.

56. At the time that Mr. Buderath delivered the evaluation, he said, "your friend Mr. Donlon better save you this time."

57. This declaration was a threat, which Plaintiff reported to Mr. Donlon.

58. As a result of the foregoing, Mr. Donlon arranged for Plaintiff's return transfer to the Finance Department.

59. Mr. Donlon's intervention prolonged Plaintiff's tenure until January 14, 2004, when Plaintiff was terminated by DaimlerChrysler, effective January 15, 2004.

60. Plaintiff was terminated two calendar weeks after Mr. Donlon's December 31, 2003 retirement from Defendant.

61. On or about December 17, 2003, Plaintiff was instructed by Noel Baril (Human Resources Representative) and Ed Labatch (Plaintiff's then-supervisor) that Plaintiff had to

demote his subordinate Wayne Worley.

62. Mr. Baril and Mr. Labatch told Plaintiff that the reason for the demotion was that that Mr. Worley was "old" and "sick."

63. Mr. Worley was at the time approximately 53 years old and had a history of serious health-related issues.

64. Plaintiff vigorously protested to both Mr. Baril and Mr. Labatch that their decision was illegal inasmuch as Mr. Worley reported to Plaintiff and Plaintiff personally knew that Mr. Worley had no performance deficiencies, much less any deficiency sufficient to justify a demotion.

65. After much discussion, Plaintiff was permitted to offer to Mr. Worley only an "opportunity" to transfer to a plant supervisor position in Toledo as an alternative to demotion.

66. That offer, however, was a sham because Plaintiff knew in advance that Mr. Worley would not accept a position in Toledo.

67. As a result of the demands of both Mr. Baril and Mr. Labatch, Plaintiff was forced to demote Mr. Worley.

## COUNT I

## RETALIATION IN VIOLATION OF THE SARBANES-OXLEY ACT OF 2002

68. Plaintiff incorporates by reference paragraphs 1 through 66 as if fully set forth at length herein.

69. Defendant violated the Sarbanes-Oxley Act when it discriminated against Plaintiff by terminating him because he had reported a violation or suspected violation of law, including but not limited to the Foreign Corrupt Practices Act of 1977, as amended.

70. As a direct and proximate result of Defendant's unlawful actions against Plaintiff,

Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice; and will continue to suffer these damages in the future. Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADEA

71. Plaintiff incorporates by reference paragraphs 1 through 69 as if fully set forth at length herein.

72. Less than one month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of his age.

73. Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his age.

74. Defendant discharged Plaintiff.

75. Plaintiff's complaint of age discrimination was a motivating factor in Defendant's decision to discharge Plaintiff.

76. Defendant's retaliatory conduct was willful.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against

Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT III

## RETALIATION IN VIOLATION OF THE ADA

77. Plaintiff incorporates by reference paragraphs 1 through 75 as if fully set forth at length herein.

78. Less than one month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of a perceived disability.

79. Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his record of a physical or mental impairment that substantially limits one or more major life activities and/or because he was regarded as having such an impairment.

80. Defendant discharged Plaintiff.

81. Plaintiff's complaint of disability discrimination was a motivating factor in Defendant's decision to discharge Plaintiff.

82. Defendant's retaliatory conduct was committed with malice or with reckless indifference to Plaintiff's protected rights.

83. As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the

community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice. Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT IV

## RETALIATION IN VIOLATION OF ELCRA

84. Plaintiff incorporates by reference paragraphs 1 through 82 as if fully set forth at length herein.

85. Less than a month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of his age.

86. Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his age.

87. Defendant discharged Plaintiff.

88. Plaintiff's complaint of age discrimination was a significant factor in Defendant's decision to discharge Plaintiff.

89. As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to

pursue the gainful occupation of choice. Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT V

## RETALIATION IN VIOLATION OF THE MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT ("HCRA")

90. Plaintiff incorporates by reference paragraphs 1 through 88 as if fully set forth at length herein

91. Less than a month before his termination, Plaintiff complained to Defendant that Wayne Worley was being discriminated against on the basis of a perceived handicap.

92. Plaintiff reasonably believed that Wayne Worley was being discriminated against on the basis of his record of a physical or mental impairment that substantially limits one or more major life activities and/or because he was regarded as having such an impairment..

93. Defendant discharged Plaintiff.

94. Plaintiff's complaint of handicap discrimination was a significant factor in Defendant's decision to discharge Plaintiff.

95. As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the

community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice. Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

## COUNT VI

## RETALIATORY DISCHARGE AGAINST PUBLIC POLICY

96. Plaintiff incorporates by reference paragraphs 1 through 94 as if fully set forth at length herein.

96. Defendant through its agents, servants, or employees, violated public policy enshrined in the Sarbanes-Oxley Act of 2002 and/or federal securities laws, regulations and/or rules.

97. Plaintiff refused to violate these policies and reported the actions of certain agents, servants, and/or employees of Defendant to Defendant's upper management levels.

98. Defendant discharged Plaintiff in whole or in part for refusing or failing to violate the federal public policy enshrined in the Sarbanes-Oxley Act of 2002 and/or federal securities laws, and for reporting the actions of the agents, servants, and/or employees of Defendant to Defendant's upper management levels.

99. As a direct and proximate result of Defendant's unlawful actions against Plaintiff, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss

of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and the loss of the ordinary pleasures of everyday life, including the opportunity to pursue the gainful occupation of choice. Additionally, Plaintiff has incurred attorney fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant including reinstatement with the same seniority status that Plaintiff would have had but for the discrimination or an award of front pay; back pay with interest; compensatory damages including costs, and reasonable attorney fees; and such other relief as the Court deems appropriate at the time of final judgment.

**EISENBERG & BOGAS, P.C.**

By: _____
Sue Ellen Eisenberg (P25530)
Kathleen L. Bogas (P25164)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway
Suite 145
Bloomfield Hills, MI 48304
Phone: 248-258-6080

Date: November 22, 2004

**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

      Plaintiff,

-v-

      Case No. 04-73806
      Judge Avern Cohn

DAIMLERCHRYSLER CORP.,
a Delaware Corporation,

      Defendant.

---

| | |
|---|---|
| EISENBERG & BOGAS, P.C. | CLARK HILL PLC |
| SUE ELLEN EISENBERG (P25530) | JOHN E. BERG (P40428) |
| KATHLEEN L. BOGAS (P25164) | Attorneys for Defendant |
| Attorneys for Plaintiff | 500 Woodward Avenue |
| 33 Bloomfield Hills Parkway | Suite 3500 |
| Suite 145 | Detroit, MI 48226 |
| Bloomfield Hills, Michigan 48304 | Tel: 313-965-8300 |
| Tel: 248-258-6080 | |
| Fax: 248-258-9212 | |

---

## JURY DEMAND

    Plaintiff David J. Bazzetta, by and through his attorneys, hereby demands a jury trial on all issues so triable.

                          EISENBERG & BOGAS, P.C.

                          By: _____
                              Sue Ellen Eisenberg (P25530)
                              Kathleen L. Bogas (P25164)
                              Attorneys for Plaintiff
                              33 Bloomfield Hills Parkway
                              Suite 145
                              Bloomfield Hills, MI 48304
Date: November 22, 2004            Phone: 248-258-6080

**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

        Plaintiff,

-v-

        Case No. 04-73806
        Judge Avern Cohn
        Magistrate Judge Donald A. Scheer

DAIMLERCHRYSLER CORP.,
a Delaware Corporation,

        Defendant.

---

| | |
|---|---|
| EISENBERG & BOGAS, P.C. | CLARK HILL, PLLC |
| SUE ELLEN EISENBERG (P25530) | JOHN E. BERG (P40428) |
| KATHLEEN L. BOGAS (P25164) | Attorney for Defendant |
| Attorneys for Plaintiff | 500 Woodward Avenue, Suite 3500 |
| 33 Bloomfield Hills Parkway | Detroit, MI 48226-3435 |
| Suite 145 | Tel: 313-965-8300 |
| Bloomfield Hills, Michigan 48304 | Fax: 313-965-8252 |
| Tel: 248-258-6080 | |
| Fax: 248-258-9212 | |

## PROOF OF SERVICE

STATE OF MICHIGAN   )
                            ) SS
COUNTY OF OAKLAND   )

     CONSTANCE A. WEBB, being duly sworn, deposes and says that on November 22, 2004, she served a copy of the First Amended Complaint and Jury Demand and this Proof of Service on:

John E. Berg
Clark Hill, PLLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226-3435

by placing same in a properly addressed envelope, with postage fully prepaid thereon and depositing in the U. S. Mail receptacle.

                                                        */s/ Constance A. Webb*
                                                        CONSTANCE A. WEBB