UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

                Plaintiff,

                                        Case No. 2:04CV73806

v.

                                        Hon. Avern L. Cohn

DAIMLERCHRYSLER CORPORATION,

                Defendant.

_____/

**DEFENDANT'S MOTION PURSUANT TO RULE 12(b)(6)
TO DISMISS COUNTS I AND VI OF THE COMPLAINT**

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNTS I AND VI OF THE COMPLAINT**

**NOTICE OF HEARING**

**CERTIFICATE OF SERVICE**

Dated:  December 2, 2004

                                        CLARK HILL PLC
                                        John E. Berg (P40428)
                                        Attorneys for Defendant
                                        500 Woodward Avenue, Suite 3500
                                        Detroit, Michigan 48226-3435
                                        (313) 965-8300

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

               Plaintiff,

                                      Case No. 2:04CV73806

v.

                                      Hon. Avern L. Cohn

DAIMLERCHRYSLER CORPORATION

               Defendant.

_____/

### DEFENDANT'S MOTION PURSUANT TO RULE 12(b)(6) TO DISMISS COUNTS I AND VI OF THE COMPLAINT

      Defendant DaimlerChrysler Corporation ("DCC"), by its attorneys, Clark Hill PLC, moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Counts I and VI of Plaintiff's Complaint in this matter, for failure of such counts to state a claim for which relief may be granted.

      This motion is supported by the brief that follows.

Dated:  December 2, 2004

                                CLARK HILL PLC

                                  By:_____
                                    John E. Berg (P40428)
                                    Attorneys for Defendant
                                    500 Woodward Avenue, Suite 3500
                                    Detroit, Michigan 48226-3435
                                    (313) 965-8300

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

                Plaintiff,

v.

                                        Case No. 2:04CV73806

DAIMLERCHRYSLER CORPORATION,

                                        Hon. Avern L. Cohn

                Defendant.

_____/

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNTS I AND VI OF THE COMPLAINT**

Dated:  December 2, 2004

                                    CLARK HILL PLC
                                    John E. Berg (P40428)
                                    Attorneys for Defendant
                                    500 Woodward Avenue, Suite 3500
                                    Detroit, Michigan 48226-3435
                                    (313) 965-8300

# TABLE OF CONTENTS

Concise Statement of Issues ...................................................................................... ii

Statement Of Controlling Authority ......................................................................... iii

Table Of Authorities ................................................................................................. iv

INTRODUCTION .......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................2

    Alleged Protected Activity..................................................................................2

    Alleged Retaliation ............................................................................................3

    Procedural History ............................................................................................4

ARGUMENT...............................................................................................................5

I.    BAZZETTA'S CLAIM THAT DCC RETALIATED AGAINST HIM IN
    VIOLATION OF THE WHISTLEBLOWER PROVISION OF THE
    SARBANES-OXLEY ACT MUST BE DISMISSED FOR FAILURE TO STATE
    A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ..................................6

    A.    Bazzetta Has Failed To State A Claim Upon Which Relief Can Be
        Granted Because He Failed To Plead A Claim Of Retaliation Under The
        Act.............................................................................................................6

        1.    Bazzetta has not pleaded that he engaged in protected activity..................7

        2.    Bazzetta has not adequately alleged a causal connection between
               his alleged protected activity and termination; indeed, he has not
               alleged that those who terminated him knew of any alleged
               protected activity....................................................................................10

    B.    Even If Bazzetta Had Alleged That He Engaged In Protected Activity,
        Such Activity Pre-Dated Enactment Of The Sarbanes-Oxley Act, And
        Thus Cannot Support A Claim For Violation Of The Act....................................13

II.    BAZZETTA'S "PUBLIC POLICY" CLAIM DOES NOT ADEQUATELY
    ALLEGE THAT HE WAS TERMINATED FOR REFUSING TO VIOLATE A
    LAW, AND THUS FAILS TO STATE A CLAIM ON WHICH RELIEF MAY
    BE GRANTED. ..................................................................................................15

CONCLUSION...........................................................................................................16

i

## CONCISE STATEMENT OF ISSUES

I.   With respect to Count I of Plaintiff's complaint:

    A.   Did Plaintiff sufficiently plead that he engaged in "protected activity" under the Sarbanes-Oxley Act?

    B.   Did Plaintiff sufficiently plead a causal connection between his alleged "protected activity" in 2001 and his termination in 2004?

    C.   Does Plaintiff state a Sarbanes-Oxley Act claim where the alleged "protected activity" took place prior to the enactment of Sarbanes-Oxley?

II.   Does Plaintiff's "public policy" claim state a claim for which relief may be granted?

ii

## STATEMENT OF CONTROLLING AUTHORITY

Issue I(A):

>   *Huffman v. Office of Personnel Management*, 263 F.3d 1341 (Fed. Cir. 2001).

>   18 U.S.C. § 1514A

Issue I(B):

>   29 C.F.R. § 1980.104(b)(1)(ii) and (iv).

>   29 C.F.R. § 1980.104(b)(2).

Issue I(C):

>   *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

>   *McIntyre v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 2003-SOX-23 (ALJ Jan. 16, 2004).

Issue II:

>   *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 316 N.W.2d 710 (1982).

>   *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 503 N.W.2d 645 (1993).

3346251v1
16750/099436

## **TABLE OF AUTHORITIES**

**Cases**

*Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392 (6th Cir. 2004) .........................................5

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995)...................................5

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................................5

*Cushman-Lagerstrom v. Citizens Insurance Co. of America*,
 72 Fed. Appx. 322 (6th Cir. 2003)..........................................................................................16

*Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 503 N.W.2d 645 (1993)...................................15

*Gilmore v. Parametric Technology Corp.*, 2003-SOX-1 (ALJ Feb. 6, 2003) ...............................13

*Huffman v. Office of Personnel Management.*, 263 F.3d 1341 (Fed. Cir. 2001)...............7, 8, 9, 10

*Kunkler v. Global Futures & Forex, Ltd.*, 2003-SOX-6 (ALJ Apr. 24, 2003)..............................13

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)...................................................................13

*Lerbs v. Buca di Beppo, Inc.*, 2004-SOX-8 (ALJ June 15, 2004) ..................................................14

*McIntyre v Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
 2003-SOX-23 (ALJ Jan. 16, 2004)....................................................................................13, 14

*Merriweather v. Tennessee Valley Authority*, 91-ERA-55 (ALJ May 21, 1992) .........................12

*Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir. 1987)...................................................5

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
 336 F3d 495 (6th Cir. 2003) ......................................................................................................5

*Reddy v. Medquist, Inc.*, 2004-SOX-35 (ALJ June 10, 2004) ........................................................8

*Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692,
 316 N.W.2d 710 (1982) ......................................................................................................15, 16

*Thankachen v. Cardone Industries*, No. 95-181,
 1995 U.S. Dist. LEXIS 14476 (E.D. Pa. Sept. 28, 1995) ........................................................14

*United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000 (10th Cir. 1996) ..................9

*United States ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (E.D. Tex. 1999)....................9

*United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326 (6th Cir. 1998)...............9

*United States ex rel. Ramseyer v. Century Healthcare Corp.*,
  90 F.3d 1514 (10th Cir. 1996) ...........................................................................7

**Statutes**

18 U.S.C. § 1514A(a)(1) ......................................................................................7

18 U.S.C. § 1514A(b)(1)-(2) ...............................................................................7

18 U.S.C. § 1514A(b)(1)(A) ................................................................................6

18 U.S.C. § 1514A(b)(1)(B) ................................................................................6

31 U.S.C. § 3730(e)(4)(B) ...................................................................................9

49 U.S.C. § 42121(b) .......................................................................................7, 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................5

**Regulations**

29 C.F.R. § 1980.104(b)(1) .................................................................................7

29 C.F.R. § 1980.104(b)(1)(i) ...........................................................................14

29 C.F.R. § 1980.104(b)(1)(ii) ..........................................................................12

29 C.F.R. § 1980.104(b)(1)(iv) .....................................................................10, 11

29 C.F.R. § 1980.104(b)(2) ...............................................................................10

v

## **INTRODUCTION**

David Bazzetta, a senior executive in DaimlerChrysler Corporation's ("DCC") Corporate Finance Department, was fired in January 2004 solely because of his own misconduct. His discharge followed an investigation, prompted and supported by his subordinates, which disclosed that he personally falsified internal company financial information and directed his subordinates to falsify internal company financial records.

Bazzetta now contends that his termination violated the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") because it allegedly resulted from internal complaints he allegedly made in 2001 about "questionable financial practices." He says that these "practices" were brought to his attention by a vice-president at an audit department meeting; that he complained about those practices to his immediate supervisor who attended the same meeting; and that he reported them to a senior executive of DCC, hoping that person would repeat the story to the Chief Financial Officer of DCC's ultimate parent corporation, DaimlerChrysler AG ("DCAG"), who Bazzetta understood was already aware of the situation.

Two-and-a-half years later, Bazzetta was terminated. By then, according to the Complaint, he had a different position in another department and a different supervisor. Both people he had spoken with in 2001 had retired. Bazzetta does not and cannot allege that his new supervisor had knowledge of his alleged discussions from years before. Nonetheless, Bazzetta claims that he was terminated in 2004 because of these discussions in 2001.

DCC now moves to dismiss Bazzetta's Sarbanes-Oxley claim, as well as a derivative "public policy" claim, because of their clear legal deficiencies. DCC will move at a later time to dismiss Bazzetta's independent claims that he was dismissed for allegedly opposing age and disability discrimination. Because this is a motion to dismiss pursuant to Fed. R. Civ. P.

1

12(b)(6), DCC is required to accept as true the allegations of Bazzetta's Complaint, no matter how false and misleading they may be. Accordingly, DCC is prohibited at this time from resting its case on the real reason for Bazzetta's termination: that David Bazzetta was not fired for blowing the whistle; the whistle was blown on him. This was in fact the determination of the Department of Labor after a thorough investigation of Bazzetta's allegations in which the Department found no evidence of protected activity and found that Bazzetta had been terminated for violating company rules and policies. *See* Exhibit A hereto.

Nonetheless, even accepting Bazzetta's complaint as true, this case is a transparent and failed attempt to manufacture a "whistleblower" claim. It is not protected "whistleblowing" to repeat audit-related information that responsible corporate audit executives have told you they are addressing. Bazzetta cannot credibly contend that he was fired in 2004 because of alleged discussions in 2001 with two executives who had both retired before his termination. David Bazzetta's Sarbanes-Oxley claim should be dismissed, together with his equally specious "public policy" claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### Alleged Protected Activity

Bazzetta was hired by DCC in May 1983, and from March 2001 to March 2002 was the Director of Manufacturing, Procurement & Supply and Research & Development Audit in the Corporate Audit Department of DCC. Compl. ¶¶ 19, 22.

In July 2001, Bazzetta attended a regularly scheduled meeting of the Corporate Audit Executive Committee in Stuttgart, Germany. A presentation was made at the meeting by Hubertus Buderath, Vice President of Corporate Audit (Stuttgart). *Id.* ¶¶ 23, 24. According to the Complaint, Buderath allegedly reported during the meeting that "business units within

2

DaimlerChrysler AG continued to maintain secret bank accounts to bribe foreign government executives even though the company knew and acknowledged that the practice was illegal under United States securities laws." *Id.* ¶¶ 23-24. Bazzetta alleges that Buderath said this was a "common practice" of Daimler Benz prior to its merger with Chrysler Corporation in late 1998; both DCAG's Chairman and its Chief Financial Officer, Manfred Gentz, allegedly had been made aware of the situation; and "the company planned to wind-down this practice," although it would be difficult. *Id.* ¶¶ 24-26.

Bazzetta claims that on the same day he learned of this practice, he protested it to his supervisor, Charles Struve, Vice President of Corporate Audit, who was in attendance at the same meeting. *Id.* ¶ 27. Dissatisfied with Struve's response, Bazzetta allegedly brought the matter of the secret bank accounts—and Struve's response—to the attention of James Donlon, then Senior Vice-President and Controller of DCC. *Id.* ¶¶ 30-34. (Bazzetta says that Donlon was protective of him and "prolonged" Bazzetta's tenure with the company. *Id.* ¶¶ 58-59.) Bazzetta asserts that he told Donlon about the alleged bank accounts in the belief that Donlon would pass the information on to Manfred Gentz, CFO of DCAG, who had "ultimate responsibility for financial oversight and compliance." *Id.* ¶ 32. The Complaint does not indicate what, if anything, Donlon did with the information allegedly provided by Bazzetta or whether Bazzetta ever pursued the matter with Donlon or anyone else.

### Alleged Retaliation

In October 2001, Buderath allegedly told Bazzetta that Struve was retiring and that Struve blamed Bazzetta for "pushing Mr. Donlon" to force Struve's retirement. *Id.* ¶¶ 43-44. Two months later, in December 2001, Bazzetta allegedly was told by Buderath and Struve that he would not replace Struve, based on "new information" that had changed Buderath's mind. *Id.*

3

¶¶ 45-47.  In February 2002, Bazzetta received what he terms "the worst performance evaluation in his career"; it had been prepared by Struve prior to his January 2002 retirement.  *Id.* ¶ 51.  In Bazzetta's view, "[t]he February 2002 performance evaluation was retaliatory," as were several other actions by Struve before his February 2002 retirement.  *Id.* ¶¶ 52-54.  Bazzetta also claims that Buderath felt "threatened" by Bazzetta's close relationship with Donlon, and that he told Bazzetta that "your friend Mr. Donlon better save you this time."  *Id.* ¶¶ 55-56.  Bazzetta regarded this as a threat, which he reported to Donlon.  *Id.* ¶ 57.  As a result, Donlon "arranged for Plaintiff's return transfer to the Finance Department" in March 2002.  *Id.* ¶¶ 58, 35.

Nearly two years later, in January 2004, Bazzetta was terminated.  *Id.* ¶ 59.  He does not, and cannot, allege that he was terminated by either of the two people (Struve and Donlon) he had spoken to about the alleged secret bank accounts two-and-a-half years earlier—both were retired at the time of Bazzetta's termination, Struve for two years.  *Id.* ¶¶ 51, 60.

Although not the basis for this motion, the actual reason for Bazzetta's termination was that he falsified internal financial information and directed his subordinates to alter financial documents.  DCC reached this conclusion based on an investigation precipitated by a complaint to DCC's business ethics office by a Bazzetta subordinate.

### Procedural History

After his termination, Bazzetta filed a complaint dated March 22, 2004 with the U.S. Department of Labor ("DOL"), alleging that he was terminated for expressing concerns about "questionable financial practices" at DCC.  Compl. ¶ 12.  A few days later, he filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that his termination was in retaliation for his opposition to the proposed demotion of his subordinate.  *Id.* at 15.  The EEOC investigator dismissed that charge, noting "a legitimate non-discriminatory reason" for the

4

dismissal.  Exhibit B; Compl. Exh. A.  Last month Bazzetta's Labor Department complaint also was dismissed, with the Department stating that "the available evidence established through interviews does not substantiate Complainant's allegation that he engaged in the protected activity of reporting violations to his supervisor."  Exhibit A hereto.[1]  The Department found that "evidence supports Respondent's claim that even if the complainant had engaged in an activity protected by the statute, he would still have been dismissed due to an internal investigation of his actions that showed he violated company ruled and policies."  *Id.*

## ARGUMENT

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, a "plaintiff's complaint must allege facts, which if proved, would entitle the claimant to relief."  *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Although the court "must construe the complaint in a light most favorable to the plaintiff" and must "accept all of the factual allegations as true," *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  Where the plaintiff has failed to meet the requirements of Rule 12(b)(6), dismissal is appropriate. Dismissal of Counts I and VI of the Complaint is plainly warranted here.

Bazzetta's Sarbanes-Oxley claim is a strained attempt to cull "whistleblower" protection from his alleged fleeting involvement in a matter that—according to his own Complaint—

---

[1]   "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records," as the Department of Labor's decision plainly is.  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 1424 (2004).

5

preceded his termination by more than two years. Corporate auditors brought the "secret bank accounts" to <u>his</u> attention, Bazzetta alleges; he did not bring the matter to the attention of DCC or DCAG. Further, Bazzetta alleges that when he purportedly learned of the issue at a briefing of senior Corporate Audit executives, he also alleges that he learned that high-level DCAG executives already had been briefed and that the issue was being addressed. Accepting these allegations as true, Bazzetta has failed to adequately allege either that he engaged in protected whistleblower activity, or that "whistleblowing" was a contributing factor when he was terminated for his own serious financial improprieties more than two years later by personnel whom he does not identify and whom he does not—and cannot—allege knew of his alleged "whistleblowing" years before. Indeed, in claiming that his conduct in 2001 was "protected activity" under a 2002 law, Bazzetta seeks improper retroactive application of Sarbanes-Oxley. The Complaint's derivative public policy claim is legally deficient and also should be dismissed.

I.  **BAZZETTA'S CLAIM THAT DCC RETALIATED AGAINST HIM IN VIOLATION OF THE WHISTLEBLOWER PROVISION OF THE SARBANES-OXLEY ACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   A.  **Bazzetta Has Failed To State A Claim Upon Which Relief Can Be Granted Because He Failed To Plead A Claim Of Retaliation Under The Act.**

The Sarbanes-Oxley "whistleblower" provision is one of fourteen whistleblower protection laws administered by the DOL. Under these statutes, complaints are filed with the DOL, and cases are heard by departmental administrative law judges. *See* http://www.oalj.dol.gov/libwhist.htm; 18 U.S.C. § 1514A(b)(1)(A) (2004).

The Sarbanes-Oxley Act also includes a provision, invoked by Bazzetta, that enables a complainant to proceed to federal court if the DOL has not issued a final decision within 180 days of the initial complaint to the agency. *See* 18 U.S.C. § 1514A(b)(1)(B). For cases brought

6

to federal court under this provision, the Act provides that the parties have the same burdens as were applicable before the DOL. *See* 18 U.S.C. § 1514A(b)(1)-(2), incorporating provisions for DOL proceedings at 49 U.S.C. § 42121(b). This ensures that when Sarbanes-Oxley cases are brought to federal court, the legal standard remains constant despite the different forum.

Under the requirements for Sarbanes-Oxley claims at 49 U.S.C. § 42121(b), the complaint "shall" be dismissed if the plaintiff fails to plead a *prima facie* case that protected activity resulted in an unfavorable personnel action. DOL regulations under Sarbanes-Oxley provide that a *prima facie* case includes "the existence of facts and evidence" that (i) "[t]he employee engaged in a protected activity or conduct; (ii) [t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity; (iii) [t]he employee suffered an unfavorable personnel action; and (iv) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." 29 C.F.R. § 1980.104(b)(1) (2004). Even accepting the allegations of Bazzetta's Complaint as true, Count I must be dismissed.

### 1.     Bazzetta has not pleaded that he engaged in protected activity.

A covered employee engages in protected activity under Sarbanes-Oxley when he "provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation" of conduct which the employee believes to be unlawful. 18 U.S.C. § 1514A(a)(1). In cases involving employees—such as Bazzetta—whose normal job duties included investigating or reporting improper activity, courts have required a heightened showing of protected activity. *See Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341, 1352 (Fed. Cir. 2001), holding that "an employee who makes disclosures as part of his normal duties cannot claim the protection of the [federal Whistleblower Protection Act]." *See also United States ex*

7

*rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996) (affirming dismissal of whistleblower retaliation claim under False Claims Act where the monitoring and reporting alleged in the complaint were plaintiff's job duties and plaintiff took no steps to put defendants on notice that she was acting in furtherance of a False Claims Act action).[2] This heightened requirement ensures that employees with auditing responsibilities and other similar jobs do not effectively acquire perpetual immunity from employment discipline through their ability to claim that any adverse action was retaliation for protected activity—which is exactly what Bazzetta attempts in this case. *See Huffman*, 263 F.3d at 1352 (citing legislative history to Whistleblower Protection Act indicating that "[t]he Committee does not intend that employees who are poor performers escape sanction by manufacturing a claim of whistleblowing. . . .").

Bazzetta's complaint fails to allege protected Sarbanes-Oxley activity under any standard. The heart of his claim is that during a Corporate Audit meeting in Germany, he "learned that business units within DaimlerChrysler AG . . . maintain[ed] secret bank accounts." Compl. ¶ 23. According to the complaint, Vice President for Corporate Audit (Stuttgart) reported that some of the highest-level DCAG executives had already been briefed about the situation, and that "the company planned to wind down this practice." *Id.* ¶ 26. Bazzetta claims that on the same day, he protested the existence of the alleged bank accounts to his supervisor, Charles Struve, who attended the same Stuttgart meeting where this briefing occurred. *Id.* ¶ 27.

This is not protected activity. In his Complaint, Bazzetta alleges that the Corporate Audit department informed him of alleged corporate misconduct that already had been brought to the

---

[2] "As the whistleblower provisions of Sarbanes-Oxley are similar to the whistleblower provisions found in many federal statutes, it is appropriate to refer to case authority interpreting these whistleblower statutes." *Reddy v. Medquist, Inc.*, 2004-SOX-35, at 3 (ALJ June 10, 2004).

3346251v1
16750/099436

attention of the appropriate Corporate Audit personnel.   *Id.* ¶¶ 24-26.   Accordingly, Corporate Audit already possessed the information, as Bazzetta indisputably knew at the time; Bazzetta did not "provide information" or "cause information to be provided" within the meaning of the Act. An employee's act of repeating to others in a company what the company executives responsible for addressing the matter have just reported to that employee is not the sort of activity that whistleblower laws are intended to address.[3]   Rather, disclosures under those laws are disclosures that reveal information "that was hidden and not known." *Huffman*, 263 F.3d at 1349-50.   This is all the more the case here, because Bazzetta alleges not only that the responsible Corporate Audit personnel knew of the alleged improper practice at the heart of his case, but also that "the company planned to wind-down this practice." Compl. ¶¶ 24-26.   Indeed, Bazzetta alleges that as part of Corporate Audit's handling of the issue, some of the most senior DCAG executives had allegedly already been briefed. *Id.* ¶ 25.

Bazzetta contends that in addition to discussing the alleged misconduct with Struve, who was at the same meeting in Stuttgart, he mentioned the matter to James Donlon, who he hoped "would pass the information onto his boss," Manfred Gentz. *Id.* ¶ 32.   This alleged report would not make Bazzetta's activity any more protected.   Bazzetta alleges elsewhere that Gentz already

---

[3]   *Qui tam* actions filed under the False Claims Act ("FCA") are instructive on this point. Courts are jurisdictionally barred from hearing a *qui tam* case filed by a person who reported information that already was public unless that person was the "original source" of the information. *See United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330, 333 (6th Cir. 1998).   The FCA defines "original source" as an "individual who has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B).   "Direct knowledge has been found to mean first-hand knowledge of the material elements of the alleged fraud which the relator has gained through his 'own efforts and not acquired from the labors of others.'" *United States ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528, 541 (E.D. Tex. 1999) (quoting *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1006-07 (10th Cir. 1996)).

9

knew of the bank accounts. *Id.* ¶ 25. An employee cannot be said to be "providing information" or "assisting an investigation" when the employee asks someone to tell another person something that, according to the employee's own story, the other person already knows. At a minimum, protected whistleblowing requires bringing information to the attention of people in a position to address it; it requires "disclosures that are likely to remedy [a] wrong." *Huffman*, 263 F.3d at 1350. Bazzetta did no such thing when he allegedly told Donlon about matters in the hope that Donlon would relay that information to someone Bazzetta knew had already been informed.

> **2.      Bazzetta has not adequately alleged a causal connection between his alleged protected activity and termination; indeed, he has not alleged that those who terminated him knew of any alleged protected activity.**

Bazzetta's whistleblower claim should be dismissed for the separate and independent reasons that he has not adequately alleged that protected activity was a contributing factor to his dismissal, or that he was terminated by someone who <u>knew</u> of the alleged protected activity.

> **a.      Bazzetta does not adequately allege a causal connection between any protected activity and his termination.**

A Sarbanes-Oxley complaint must state a *prima facie* case or be dismissed. 49 U.S.C. § 42121(b), *supra* at 6. One of the four elements of a *prima facie* case is the existence of "circumstances . . . sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." 29 C.F.R. § 1980.104(b)(1)(iv) (2004).

A plaintiff typically meets the requirement of pleading causation by alleging "that the adverse personnel action took place shortly after the protected activity." 29 C.F.R. § 1980.104(b)(2). In this case, Bazzetta's alleged protected activity occurred during the latter half of 2001 and early 2002. Compl. ¶¶ 22-58. Bazzetta was terminated in 2004. *Id.* ¶ 11. These circumstances wholly fail to support an inference of causation. Indeed, the fact that

10

Bazzetta remained with DCC for more than two years after his alleged protected activity strongly indicates that he was <u>not</u> the object of retaliation.

For other reasons as well, Bazzetta has failed in his obligation to allege "circumstances . . . sufficient to raise the inference that the protected activity was a contributing factor." 29 C.F.R. § 1980.104(b)(1)(iv). Bazzetta depicts his manager in the Corporate Audit Department, Charles Struve, as his principal nemesis; Struve is one of the two people he allegedly told what he learned at the Stuttgart meeting. Yet Bazzetta acknowledges that Struve retired from DCC in January 2002, a full <u>two years before Bazzetta was terminated</u>. Compl. ¶ 51. Bazzetta therefore plainly does not allege that Struve orchestrated, or had anything to do with, his termination. Nor does he allege that Struve reported Bazzetta's complaints to anyone who was involved in the decision to terminate his employment.

Bazzetta also allegedly reported the information he learned in Stuttgart to James Donlon. But Donlon also had retired from DCC when Bazzetta was terminated. *Id.* ¶ 60. Further, Bazzetta never suggests that Donlon was involved in his termination; to the contrary, the Complaint portrays Donlon as Bazzetta's longtime protector and benefactor. *See, e.g.*, Compl. ¶¶ 55-60. There is no plausible inference that Donlon retaliated against Bazzetta in any way, nor does the Complaint indicate that Donlon ever told anyone else about Bazzetta's alleged complaints.

While Bazzetta nowhere alleges that Hubertus Buderath played a role in his termination, he does allege that "Buderath was threatened by Plaintiff's connection to Mr. Donlon, who was higher than Mr. Buderath in the organizational structure," given what Bazzetta alleges to be "Mr. Buderath's belief that Mr. Donlon had forced Mr. Struve to retire as a result of Plaintiff's complaints about auditing and financial improprieties." *Id.* ¶ 55. To the extent this is supposed

11

to further Bazzetta's allegation of Sarbanes-Oxley retaliation, it fails in multiple respects. First, Bazzetta does not allege that Buderath played a role in his termination. Second, at the time of Bazzetta's termination his "connection" to Donlon and Donlon's ability to "force" someone's retirement were irrelevant—Donlon had retired; therefore, Bazzetta's supposed connection to him could not have "threatened" anyone. Finally, even if Buderath had orchestrated Bazzetta's termination in order to preserve his own job, that simply does not constitute retaliation for statements Bazzetta supposedly made about "secret bank accounts" two years earlier.

### b. Bazzetta does not allege that those who terminated him were aware of any protected activity.

A Sarbanes-Oxley complaint must also allege that "[t]he named person knew or suspected, actually or constructively, that [he] engaged in [] protected activity." 29 C.F.R. § 1980.104(b)(1)(ii). Thus, Bazzetta had to allege that someone with knowledge of his purported statements regarding the bank accounts played a role in his termination in order to avoid dismissal of Count I. *See Merriweather v. Tennessee Valley Auth.*, 91-ERA-55, at 3 (ALJ May 21, 1992) (indicating that for a whistleblower claim, "[k]nowledge by the deciding officials of the complainant's claimed protected activity is an essential element of his case").

In this case, Bazzetta alleges that his supervisor at the time of his termination was Edmund Labatch. Although Bazzetta alleges that shortly before his termination he objected to Labatch's supposed instruction to demote a subordinate who was "old and sick," he does not allege that Labatch—or anyone who was personally involved in his termination—knew of his purported statements regarding the bank accounts. Because Bazzetta failed to allege that someone with knowledge of his alleged protected activity played a role in his termination, his Sarbanes-Oxley claim must be dismissed.

12

**B.   Even If Bazzetta Had Alleged That He Engaged In Protected Activity, Such Activity Pre-Dated Enactment Of The Sarbanes-Oxley Act, And Thus Cannot Support A Claim For Violation Of The Act.**

Bazzetta's Sarbanes-Oxley claim must be dismissed for the additional reason that his statements in 2001 could not have been "protected activity" under a statute that was not enacted until the next year. Sarbanes-Oxley became law on July 30, 2002. The meeting in Stuttgart during which Bazzetta allegedly learned of the "secret bank accounts" occurred in July 2001. The alleged discussion with Struve occurred at the same time, and his purported discussion with Donlon occurred "upon Plaintiff's return" from Stuttgart. Compl. ¶¶ 23, 24-29, 31.[4]

There is a strong presumption against retroactive application of statutes, and courts should apply statutes prospectively unless retroactive application was clearly intended by Congress. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). In enacting Sarbanes-Oxley, Congress manifested no intention that the law be applied retroactively. Accordingly, under *Landgraf,* exclusively prospective application is appropriate.

Four administrative law judges have addressed whether Sarbanes-Oxley should be applied retroactively. Three have concluded it should not. *Kunkler v. Global Futures & Forex, Ltd.*, 2003-SOX-6 (ALJ Apr. 24, 2003); *Gilmore v. Parametric Tech. Corp.*, 2003-SOX-1 (ALJ Feb. 6, 2003); *McIntyre v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 2003-SOX-23 (ALJ Jan.

---

[4]   Bazzetta also alleges that during his tenure in the Corporate Audit Department between March 2001 and March 2002, he participated in several audits which he variously described as not completed, withheld, suppressed and/or buried by Struve. Compl. ¶¶ 35-38. Bazzetta claims to have objected to Struve about the audits and to have reported the situation to Donlon. *Id.* ¶¶ 39-42. Bazzetta does not allege that his complaints about these audits played a part in his termination, *id.* ¶ 69, presumably because the two people to whom he claims to have objected, Struve and Donlon, retired before his termination. *Id.* ¶¶ 51, 60. Even if Bazzetta had offered his objections to these audits as a cause of his termination, this allegation would suffer the same legal deficiencies as his other supposed complaints described above, and also from the legal defect that his complaints or "protected activity" predated the Act.

13

16, 2004).[5]   In *McIntyre*, the claimant alleged that he experienced retaliation, including blacklisting occurring after the effective date of Sarbanes-Oxley (2003-SOX-23, at 2), stemming from the claimant's conduct occurring before the Act.   The administrative law judge identified the "first and primary issue" as "whether Complainant's whistle blowing activities . . . were protected under the Act in so far as they all occurred prior to the enactment of Sarbanes-Oxley." *Id.* at 12.   The ALJ concluded that Sarbanes-Oxley did not retroactively confer protection upon conduct that pre-dated the Act:

> In reviewing the Act I find no express provision authorizing retroactive application.   Thus, I find that Complainant's reporting activity including his appeal to the NASD did not constitute protected activity in that such activity [occurred] prior to the effective date of the Act, i.e., July 30, 2002.   Thus any discharge or adverse employment action for said conduct does not violate the Act.

*Id.*   Precisely the same reasoning applies here: Bazzetta's alleged complaints preceded the effective date of Sarbanes-Oxley by several months; therefore, they cannot support a whistleblowing claim under the Act.   *Cf. Thankachen v. Cardone Indus.*, No. 95-181, 1995 U.S. Dist. LEXIS 14476, at *4-6 (E.D. Pa. Sept. 29, 1995) (construing Family and Medical Leave Act as barring retroactive application: "Plaintiff cannot allege conduct violative of the FMLA – here retaliatory conduct – when the conduct which spawned the retaliation did not fall within the FMLA.").

In short, the first element of a *prima facie* claim under Sarbanes-Oxley is that "the employee engaged in a protected activity or conduct."   29 C.F.R. § 1980.104(b)(1)(i) (2004).

---

[5]   Notwithstanding *Landgraf* and the three administrative law judge opinions cited above, another administrative law judge came to the opposite conclusion in *Lerbs v. Buca di Beppo, Inc.*, 2004-SOX-8 (ALJ June 15, 2004).   In *Lerbs*, the administrative law judge stated that an employee is covered under the Act if his protected activity occurred before the Act's effective date so long as the retaliation occurred after that date.   *Id.* at 11.   This statement is *dictum*, since the judge went on to conclude that the claimant in that case had not engaged in protected activity in any event.

14

The discussions in 2001 on which Bazzetta bases his claim were not protected when they occurred because the Act did not exist at the time. Because he can show no "protected activity" under Sarbanes-Oxley, Bazzetta has failed to state an enforceable Sarbanes-Oxley claim.

*   *   *

Bazzetta's Sarbanes-Oxley claim is a transparent attempt to conjure whistleblower protection for unprotected activity far in the past. It should be dismissed because it fails to state a claim upon which relief can be granted, and because the spirit of the Sarbanes-Oxley Act itself requires that employers be able to discharge employees who falsify company financial information without the specter of unsupported *ex post facto* claims such as Bazzetta brings here.

## II.   BAZZETTA'S "PUBLIC POLICY" CLAIM DOES NOT ADEQUATELY ALLEGE THAT HE WAS TERMINATED FOR REFUSING TO VIOLATE A LAW, AND THUS FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.

Under Michigan law, discharge is prohibited on public policy grounds where: 1) It results from an exercise by the employee of a right conferred by a "well-established legislative enactment"; 2) it results from a failure or refusal of the employee to violate a law in the course of employment; or 3) it contravenes an explicit legislative statement prohibiting discharge for acting in accordance with a statutory right or duty. *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 695-96, 316 N.W.2d 710, 712 (1982). However, where a statute provides remedies for a right that has no common law counterpart, those statutory remedies are exclusive and a public policy claim will not lie. *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 78-80, 503 N.W.2d 645, 649-50 (1993).

Bazzetta's public policy claim appears founded primarily on the "policy enshrined in the Sarbanes-Oxley Act." Compl. ¶¶ 96-98. The whistleblower provision of Sarbanes-Oxley has no

15

common law counterpart, however.[6]  Accordingly, Sarbanes-Oxley's protection is exclusive and precludes a non-Sarbanes-Oxley "public policy" claim.

Bazzetta also alleges that DCC discharged him "for refusing or failing to violate the public policy enshrined in the Sarbanes-Oxley Act."  Compl. ¶ 98.  This passage, an obvious attempt to qualify under the second "public policy" exception in *Suchodolski*, is no more than a play on words.  Bazzetta does not allege that he failed or refused to violate a <u>law</u>, or that he was disciplined for such a failure or refusal.  Rather, he alleges that DCC's supposed retaliation for reporting violations of law was a violation of the "policy" of Sarbanes-Oxley.  While a "public policy" claim can be founded on a failure or refusal to violate a law, it cannot be based on a failure or refusal to violate what the employee thinks is the policy behind the law.  *Suchodolski, supra*.  Bazzetta thus has not alleged a cause of action under the "public policy" exception, and Count VI should be dismissed.

## CONCLUSION

David Bazzetta's termination for falsifying internal corporate financial records and directing subordinates to do the same furthered the important objectives of the Sarbanes-Oxley Act, i.e. safeguarding the integrity of the financial reporting process.  He has failed to allege facts to the contrary, even accepting his spurious Complaint as true.  For all the foregoing reasons, Counts I and VI of Bazzetta's Complaint should be dismissed.

---

[6]   Michigan does not recognize either a statutory or common law cause of action arising from an employee's reporting actual or suspected violations of law to a superior.  *Cushman-Lagerstrom v. Citizens Ins. Co. of Am.*, 72 Fed. Appx. 322, 330 (6th Cir. 2003).

16

Respectfully submitted,

Dated:  December 2, 2004                    CLARK HILL PLC


By:_____
           John E. Berg (P40428)
Attorneys for Defendant
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
(313) 965-8300

17

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

          Plaintiff,

                                        Case No. 2:04CV73806

v.

                                        Hon. Avern L. Cohn

DAIMLERCHRYSLER CORPORATION

          Defendant.

_____/

## **NOTICE OF HEARING**

TO:    Sue Ellen Eisenberg (P25530)
        Kathleen L. Bogas (P25164)
        Attorneys for Plaintiff

PLEASE TAKE NOTICE that Defendant DaimlerChrysler Corporation's motion

pursuant to Rule 12(b)(6) to dismiss Counts I and VI of the complaint will be brought on for

hearing before the Honorable Avern L. Cohn, United States District Judge, at a time and date to

be set by the Court.

Dated: December 2, 2004

                                   CLARK HILL PLC

                                   By:_____

                                      John E. Berg (P40428)
                                    Attorneys for Defendant
                                    500 Woodward Avenue, Suite 3500
                                    Detroit, Michigan 48226-3435
                                    (313) 965-8300

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. BAZZETTA,

          Plaintiff,

                                 Case No. 2:04CV73806

v.

                                 Hon. Avern L. Cohn

DAIMLERCHRYSLER CORPORATION

          Defendant.

_____/

## CERTIFICATE OF SERVICE

Chris Shuryan, of Clark Hill PLC, being first duly sworn, deposes and says that on

December 2, 2004, she served a copy of:

1.     Defendant's Motion Pursuant to Rule 12(b)(6) to Dismiss Counts I and VI of the Complaint;

2.     Memorandum in Support of Defendant's Motion to Dismiss Counts I and VI of the Complaint;

3.     Notice of Hearing;

4.     Defendant's Notice of Reliance Upon Fed. R. Civ. P. 12(a)(4); and

5.     Certificate of Service.

upon:

          Sue Ellen Eisenberg
          Kathleen L. Bogas
          Eisenberg & Bogas, P.C.
          33 Bloomfield Hills Parkway, Suite 145
          Bloomfield Hills, MI  48304

by enclosing said copy in an envelope addressed accordingly and depositing same in the U.S.

Mail receptacle at 500 Woodward, Detroit, MI 48226, with first class postage fully paid thereon.

Chris Shuryah

Subscribed and sworn to before me
this 2nd day of December 2004.

MARTY ANN BRISCOE
Notary Public, Wayne County, MI
My Commission Expires 06-08-2007

2

3346251v1
16750/099436